UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No.: _____

RAY BRIAND DESAMOUR,

Plaintiff,

v.

AUTONATION, INC.; and

FIRST ADVANTAGE BACKGROUND SERVICES CORP.,

Defendants.

_____/

FILED BY _____ D.C.

JUN 09 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT,**
**15 U.S.C. §§ 1681b(b)(3), 1681g(a)(1);**
**AND FLORIDA PROMISSORY ESTOPPEL**

Plaintiff Ray Briand Desamour, appearing pro se, brings this action against Defendants

AutoNation, Inc. and First Advantage Background Services Corp., and alleges as follows:

### I. NATURE OF THE ACTION

1. This is an action for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681

et seq., and Florida common law. Plaintiff brings two counts under the FCRA: (a) against First

Advantage Background Services Corp. for failing to clearly and accurately disclose Plaintiff's

consumer file in violation of 15 U.S.C. § 1681g(a)(1); (b) against AutoNation, Inc. for failing to

provide Plaintiff a meaningful opportunity to dispute his consumer report before taking adverse

employment action, in violation of 15 U.S.C. § 1681b(b)(3). Plaintiff also brings a separate state

law claim of promissory estoppel against AutoNation arising from Plaintiff's detrimental reliance on AutoNation's written employment offer.

2.  As a direct result of Defendants' violations, Plaintiff resigned from stable, documented employment where he earned documented commissions, draw, and bonuses totaling approximately $91,000 on an annualized basis, in reasonable reliance on AutoNation's written employment offer, only to be denied that opportunity based on a consumer report that was never clearly disclosed to him and that he was never given a lawful opportunity to dispute before the final adverse decision was made. Plaintiff was left jobless through no fault of his own.

3.  This case arises from employment-related FCRA violations that caused substantial reliance and employment damages. Plaintiff gave up documented, stable employment on the strength of a written job offer. The violations alleged herein directly caused that loss.

## II. JURISDICTION AND VENUE

4.  This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which provides that any action under the FCRA may be brought in any appropriate United States district court. This Court has supplemental jurisdiction over Plaintiff's state law promissory estoppel claim pursuant to 28 U.S.C. § 1367, as it arises from the same nucleus of operative facts as the federal claims.

5.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in Palm Beach County, Florida, within the Southern District of Florida, West Palm Beach Division. AutoNation BMW of Delray Beach is located in Delray Beach, Palm Beach County, Florida. Plaintiff resides in Palm Beach County, Florida.

2

### III. PARTIES

6.  Plaintiff Ray Briand Desamour is a natural person residing in Palm Beach County, Florida, and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

7.  Defendant AutoNation, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business in Fort Lauderdale, Florida. AutoNation operates hundreds of automotive dealerships nationwide, including AutoNation BMW of Delray Beach, located in Delray Beach, Palm Beach County, Florida. AutoNation employs dedicated human resources and legal compliance personnel and processes thousands of employment applications annually. At all relevant times, AutoNation was a "person" within the meaning of 15 U.S.C. § 1681a(b) and procured a consumer report on Plaintiff for employment purposes within the meaning of 15 U.S.C. § 1681b(b).

8.  Defendant First Advantage Background Services Corp. ("First Advantage") is a corporation registered to do business in Florida and is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f), regularly engaged in assembling consumer information for the purpose of furnishing consumer reports to third parties. First Advantage is a national employment background screening company that processes millions of consumer reports annually and has been the subject of prior federal litigation concerning its FCRA disclosure obligations. See Williams v. First Advantage LNS Screening Solutions, Inc., 947 F.3d 735 (11th Cir. 2020).

### IV. FACTUAL ALLEGATIONS

**A. Plaintiff's Employment History and the AutoNation Offer**

9.  At all relevant times, Plaintiff was employed as an automotive sales professional at Arrigo Chrysler Dodge Jeep Ram of West Palm Beach, where his documented compensation , including

3

commissions, draw advances, end-of-month commission reconciliations, and performance bonuses , totaled approximately $91,000 on an annualized basis. (See Exhibit A: Pay Stubs.)

10. In or around March 2026, Plaintiff was recruited for a sales position at AutoNation BMW of Delray Beach. Plaintiff received a written, timestamped employment offer from AutoNation. (See Exhibit A: Job Offer Email.) Plaintiff reasonably understood the offer as a genuine commitment to employ him subject to completion of onboarding steps directed by AutoNation.

11. In reasonable reliance on AutoNation's written employment offer, Plaintiff tendered his resignation from Arrigo Chrysler Dodge Jeep Ram of West Palm Beach. (See Exhibit A: Letter of Resignation.) At the time of his resignation, Plaintiff was actively employed and earning documented income.

12. In connection with the offer, AutoNation caused First Advantage to prepare a consumer report on Plaintiff for employment purposes, and directed Plaintiff to submit to a background check and drug screening. (See Exhibit B: Background Check and Drug Test Request.)

**B. The Defective Pre-Adverse Action Process: AutoNation**

13. On or about March 27, 2026, AutoNation issued Plaintiff a pre-adverse action notice stating it was considering taking adverse action based on a consumer report. (See Exhibit B: Pre-Adverse Action Notice.)

14. The First Advantage consumer report furnished to AutoNation for purposes of the employment decision reflects a Completed Date of April 3, 2026, a full seven calendar days after AutoNation issued its pre-adverse action notice on March 27, 2026. (See Exhibit D: AutoNation Consumer Report, reflecting Created Date 2026-03-25 and Completed Date 2026-04-03.) The

pre-adverse action notice was therefore issued while the background screening process was still ongoing and the report had not yet reached its final completed status.

15. On April 3, 2026, the same date reflected as the Completed Date on the First Advantage consumer report furnished to AutoNation, AutoNation issued its final adverse action notice denying Plaintiff the employment opportunity. (See Exhibit B: Final Adverse Action Notice, dated April 3, 2026; Exhibit D: AutoNation Consumer Report, Completed Date 2026-04-03.) The fact that the report's completion date and the final adverse action share the same date demonstrates that AutoNation could not have meaningfully investigated or considered any dispute from Plaintiff before taking final adverse action.

16. Plaintiff submitted two written dispute letters challenging the accuracy and completeness of the consumer report: a first dispute letter dated March 30, 2026, and a second dispute letter dated April 2, 2026. (See Exhibit B: Dispute Letter 1; Dispute Letter 2.) AutoNation provided no written acknowledgment of either dispute letter. AutoNation conducted no reinvestigation. AutoNation did not contact Plaintiff regarding the substance of his disputes. The adverse action was finalized without any consideration of Plaintiff's written responses.

17. The FCRA requires that before taking any adverse action, the employer must provide the consumer a "reasonable" opportunity to dispute the report. Courts have confirmed that an employer violates this requirement when adverse action is taken before the consumer has a meaningful chance to respond. See Reardon v. ClosetMaid Corp., 2013 WL 6231606, at *8 (W.D. Pa. Dec. 2, 2013) (finding FCRA violation where employer failed to allow meaningful dispute window before finalizing adverse action); Robertson v. Allied Solutions, LLC, 902 F.3d

690 (7th Cir. 2018) (holding plaintiff had standing and stated a claim for pre-adverse action notice violation).

18. AutoNation issued its pre-adverse notice on March 27, 2026, at a time when the First Advantage background screening process had not yet reached its Completed Date. A consumer cannot meaningfully dispute the contents of a report that the screening company has not yet finalized. The pre-adverse notice was therefore issued prematurely, and the simultaneous report completion and final adverse action on April 3, 2026 eliminated any genuine opportunity to dispute. Plaintiff was never informed that the report remained in process, and reasonably believed his written disputes would be reviewed before any final employment decision was made. For clarity, the employment consumer report furnished to AutoNation (Exhibit D) is distinct from the separate consumer file disclosure produced to Plaintiff under 15 U.S.C. § 1681g(a)(1) on or about April 10, 2026 (Exhibit C). The §1681b(b)(3) claim is grounded in Exhibit D; the §1681g(a)(1) claim is grounded in Exhibit C.

**C. The Unreadable Consumer File: First Advantage**

19. Plaintiff made a written request to First Advantage for a complete copy of his consumer file pursuant to 15 U.S.C. § 1681g(a)(1).

20. In response to Plaintiff's request, First Advantage produced a document consisting substantially of raw, machine-generated computer code, specifically SOAP/XML markup and system-level data formatted for machine-to-machine transmission, not for human comprehension. (See Exhibit C: First Advantage Consumer File.)

21. The file as produced by First Advantage cannot be read, understood, or meaningfully interpreted by a consumer without specialized technical programming expertise. Specifically: (a)

6

consumer record data is embedded within nested XML element tags such as '<OrderXml>', '<Result>', '<InputECO>', and '<SubjectData>' that are not visible or labeled in plain language; (b) personal identifying information and case-level data are interspersed with system-generated metadata, transmission routing codes, and programmatic data-type labels; (c) the narrative disposition of the criminal record at issue, the very information Plaintiff needed to review and dispute, is encoded within machine-readable fields with no plain-English summary or consumer-facing label; and (d) the document contains no consumer-readable narrative structure, no plain-language summary, and no formatting that would allow an ordinary person to identify what information was reported, in what context, or how to dispute it.

22. 15 U.S.C. § 1681g(a)(1) requires every consumer reporting agency to "clearly and accurately disclose" all information in the consumer's file upon request. That obligation requires disclosure in a form comprehensible to the consumer and sufficient to permit the consumer to compare the disclosed information against his own personal information. Cortez v. Trans Union, LLC, 617 F.3d 688, 711 (3d Cir. 2010). Courts have further held that the disclosure obligation is willfully violated when a CRA's format leaves the consumer "in the dark" about information in his own file. Ramirez v. TransUnion LLC, 951 F.3d 1008, 1026 (9th Cir. 2020). First Advantage's production of raw SOAP/XML code fails that standard on its face.

23. The purpose of the § 1681g(a)(1) disclosure right is to allow the consumer to identify errors and exercise dispute rights. As the Third Circuit recognized, when a CRA does not disclose information in a comprehensible manner, "the system designed by Congress for ensuring the accuracy of credit reports breaks down. A consumer cannot meaningfully dispute inaccurate items of information on a credit report if the CRA never discloses to the consumer that certain information is on the credit report in the first instance." Cortez, 617 F.3d at 711. This principle

7

applies with equal, and even greater, force where, as here, the consumer cannot read the file at all because it was produced in machine code.

24. As a direct result of First Advantage's failure to produce a human-readable disclosure, Plaintiff was unable to identify, understand, or dispute the specific information in his consumer file that served as the basis for AutoNation's adverse employment decision.

**D.  Willfulness of Defendants' Conduct**

25. AutoNation's violations of § 1681b(b)(3) were willful within the meaning of 15 U.S.C. § 1681n. AutoNation is a corporation operating hundreds of automotive dealerships nationwide. AutoNation employs dedicated human resources and legal compliance personnel. The FCRA's pre-adverse action requirements have been in effect since 1997 and are widely published by the Federal Trade Commission and the Consumer Financial Protection Bureau. AutoNation's failure to implement a compliant pre-adverse action process at the scale and sophistication of its operations reflects reckless disregard for established federal law. The issuance of a pre-adverse notice against an incomplete report, followed by simultaneous completion and final adverse action on the same day, is not an isolated clerical error, it reflects reckless disregard for the statutory rights of employment applicants.

26. First Advantage's violations of § 1681g(a)(1) were willful within the meaning of 15 U.S.C. § 1681n. First Advantage is a national background screening company that processes millions of consumer reports annually. First Advantage has been the subject of prior federal litigation establishing its obligations under the FCRA's disclosure provisions. See Williams v. First Advantage LNS Screening Solutions, Inc., 947 F.3d 735 (11th Cir. 2020) (affirming $1.25 million judgment against First Advantage in individual FCRA action). The FCRA's "clearly and

accurately" requirement has been the law since 1970. A company with First Advantage's litigation history and compliance infrastructure that continues to deliver raw SOAP/XML code as a consumer file disclosure does so with reckless disregard for its statutory obligations. Delivering machine-generated code as a consumer file disclosure is not an inadvertent error; it reflects a deliberate product delivery choice that First Advantage knowingly maintains.

**E. Plaintiff's Damages**

27. As a direct and proximate result of Defendants' violations, Plaintiff suffered the following actual damages:

(a) Loss of the employment opportunity at AutoNation BMW of Delray Beach;

(b) Lost wages and income from April 3, 2026 through the present, based on Plaintiff's documented annualized compensation of approximately $91,000 from commissions, draw, and bonuses;

(c) Loss of his prior employment at Arrigo Chrysler Dodge Jeep Ram of West Palm Beach, from which he resigned in documented, reasonable reliance on AutoNation's written offer;

(d) Damage to his professional reputation and standing in the automotive sales industry, a relationship-driven field where unexplained employment gaps carry professional consequences;

(e) Emotional distress, anxiety, humiliation, and mental anguish, including sleep disruption, persistent anxiety over meeting financial obligations, and the stress of explaining to colleagues, recruiters, and prospective employers why he resigned from

9

stable employment for a position that was withdrawn through an unlawful screening process;

(f) Financial instability caused by the sudden and unexpected loss of income, including inability to meet recurring financial obligations that were reasonably anticipated based on his documented employment at Arrigo and the pending AutoNation offer.

## V. CAUSES OF ACTION

### COUNT I

**Violation of 15 U.S.C. § 1681b(b)(3): Failure to Provide a Meaningful Pre-Adverse Action Process**
**(Against Defendant AutoNation, Inc.)**

28. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

29. 15 U.S.C. § 1681b(b)(3)(A) provides:

*"[I]n using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates — (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this subchapter."*

30. AutoNation is a "person" within the meaning of 15 U.S.C. § 1681a(b) and § 1681b(b)(3). The statute expressly governs "any person" who uses a consumer report for employment purposes. Congress enacted § 1681b(b)(3) specifically to protect employment applicants from

10

exactly the conduct alleged here: an adverse employment decision made without a meaningful opportunity to dispute the underlying report.

31. AutoNation violated § 1681b(b)(3) by: (a) issuing a pre-adverse action notice on March 27, 2026, while the First Advantage background screening process remained ongoing and had not yet reached its Completed Date, thereby depriving Plaintiff of any meaningful opportunity to dispute a report that had not yet been finalized; (b) issuing the final adverse action on April 3, 2026, the same date the report reflects as its Completed Date, eliminating any dispute window as a matter of timing; and (c) failing to conduct any reinvestigation or provide any acknowledgment of Plaintiff's written dispute letters dated March 30 and April 2, 2026, prior to finalizing the adverse employment decision.

32. Courts addressing § 1681b(b)(3) have confirmed that the pre-adverse action process must provide a real, not illusory, opportunity to dispute. See Reardon v. ClosetMaid Corp., 2013 WL 6231606, at *8 (W.D. Pa. Dec. 2, 2013); Robertson v. Allied Solutions, LLC, 902 F.3d 690 (7th Cir. 2018). Here, the opportunity was not merely inadequate. it was structurally impossible. The pre-adverse notice preceded the completed report. The adverse action arrived the same day the report was finalized. No dispute could have been meaningfully considered in that sequence.

33. As a result of AutoNation's violations, Plaintiff suffered actual damages as set forth herein. AutoNation's violations were willful and/or negligent within the meaning of 15 U.S.C. §§ 1681n and 1681o, entitling Plaintiff to actual damages, statutory damages of not less than $100 and not more than $1,000 per violation, punitive damages, costs, and attorneys' fees.

**COUNT II**

11

**Violation of 15 U.S.C. § 1681g(a)(1): Failure to Clearly and Accurately Disclose Consumer File**
**(Against Defendant First Advantage Background Services Corp.)**

34. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

35. 15 U.S.C. § 1681g(a)(1) provides:

> *"Every consumer reporting agency shall, upon request, clearly and accurately disclose to the consumer: (1) All information in the consumer's file at the time of the request . . ."*

36. First Advantage is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f).

37. Plaintiff made a proper written request to First Advantage for a complete disclosure of his consumer file pursuant to 15 U.S.C. § 1681g(a)(1).

38. In response, First Advantage produced a document consisting substantially of raw, machine-generated SOAP/XML computer code that no consumer could reasonably read, understand, or use to identify errors or exercise rights under the FCRA. (Exhibit C.)

39. A disclosure in raw machine code format does not constitute a "clear and accurate" disclosure within the meaning of § 1681g(a)(1). The word "clearly" in the statute imposes an affirmative obligation that the disclosure be comprehensible to the consumer for whom it is intended. See Cortez v. Trans Union, LLC, 617 F.3d 688, 711 (3d Cir. 2010) (holding that a § 1681g disclosure must be "made in a manner sufficient to allow the consumer to compare the disclosed information from the credit file against the consumer's personal information"); Ramirez v. TransUnion LLC, 951 F.3d 1008, 1026 (9th Cir. 2020) (affirming § 1681g(a)(1) was willfully

12

violated when CRA's disclosure format left consumers "in the dark" about information in their files).

40. The obligation under § 1681g(a)(1) requires a disclosure that the consumer can actually understand and use. First Advantage's production of raw SOAP/XML code is the opposite of a clear and accurate disclosure, and it fails the standard on its face.

41. As a direct and proximate result of First Advantage's violation, Plaintiff was unable to meaningfully review his consumer file, identify inaccuracies, or exercise his statutory dispute rights before AutoNation's adverse employment decision was finalized. The § 1681g(a)(1) violation directly contributed to and compounded the harm caused by AutoNation's § 1681b(b)(3) violation.

42. First Advantage's violations were willful and/or negligent within the meaning of 15 U.S.C. §§ 1681n and 1681o, entitling Plaintiff to actual damages, statutory damages of not less than $100 and not more than $1,000 per violation, punitive damages, costs, and attorneys' fees.

## COUNT III

### Promissory Estoppel
### (Against Defendant AutoNation, Inc. Only)

43. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

44. This Count is brought under Florida common law and is independent of Plaintiff's FCRA claims.

45. AutoNation made a clear and definite written promise to Plaintiff in the form of a timestamped written employment offer for a sales position at AutoNation BMW of Delray

Beach. That offer was accompanied by onboarding instructions, including background screening and drug testing directives, that AutoNation issued as part of the hiring process. (See Exhibit A: Job Offer Email.) AutoNation actively directed Plaintiff's pre-employment conduct before screening was complete.

46. AutoNation knew, or reasonably should have known, that Plaintiff would rely on that written offer by immediately resigning from his existing employment. In automotive retail, a sales professional accepting a competing dealership's offer must resign from his current position. This is not merely foreseeable, it is the certain, expected, and industry-known consequence of accepting such an offer. AutoNation, as a major multi-brand automotive retailer, understood this dynamic.

47. Plaintiff reasonably and actually relied on AutoNation's written promise by resigning from his position at Arrigo Chrysler Dodge Jeep Ram of West Palm Beach, where his documented compensation totaled approximately $91,000 on an annualized basis. (See Exhibit A: Letter of Resignation; Pay Stubs.) Plaintiff's resignation was directly caused by and timed to AutoNation's written offer and onboarding directives.

48. The detriment Plaintiff suffered was substantial and irreversible. By resigning, Plaintiff permanently relinquished his prior employment, his income stream, his client relationships, and his standing at Arrigo. That detriment cannot be undone. Injustice can be avoided only by enforcement of AutoNation's promise in the form of reliance damages.

49. Under Florida law, a promise that the promisor should reasonably expect to induce action or forbearance, and which does induce such action, may be enforced where injustice can be avoided only by enforcement of the promise. W.R. Grace and Co. v. Geodata Services, Inc., 547 So. 2d

919, 924 (Fla. 1989). Florida courts have enforced promissory estoppel in employment contexts where the employer's conduct induced demonstrable detrimental reliance. The fact that the offer letter contained at-will language does not extinguish the doctrine where, as here, the plaintiff's specific detrimental act, resignation from prior employment, was directly induced by and foreseeable from AutoNation's affirmative written promise and onboarding directives.

50. As a result of AutoNation's broken promise, Plaintiff is entitled to reliance damages, including but not limited to lost wages from the date of his resignation through the date of re-employment, at a rate of approximately $91,000 per year.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ray Briand Desamour respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally where applicable, and award the following relief:

- Actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1), including but not limited to lost wages, lost employment opportunity, and emotional distress damages;

- Statutory damages of not less than $100 and not more than $1,000 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A);

- Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) for willful noncompliance by both Defendants;

- Reliance damages against AutoNation, Inc. under Florida promissory estoppel, including lost wages from resignation through re-employment;

15

- Costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and

  1681o(a)(2);

- Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Ray Briand Desamour hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**Ray Briand Desamour**
Pro Se Plaintiff
5510 Chase Court
West Palm Beach, FL 33415
561-530-8886
leaderbine@gmail.com

Date: ___6/9/26___

## EXHIBIT LIST

**Exhibit A:** Job Offer Email (timestamped); Letter of Resignation from Arrigo Chrysler Dodge Jeep Ram of West Palm Beach; Pay Stubs Evidencing Active Employment at Time of Resignation

**Exhibit B:** Background Check and Drug Test Request; Pre-Adverse Action Notice dated March 27, 2026; Final Adverse Action Notice dated April 3, 2026; Dispute Letter 1; Dispute Letter 2

**Exhibit C:** First Advantage Consumer File as Produced to Plaintiff (Machine-Generated SOAP/XML Format, dated April 3, 2026)

**Exhibit D:** AutoNation Consumer File / Consumer Report as Received by AutoNation from

First Advantage